IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 20-05027-01-CR-SW-MDH |
| ) | |
| QUENNEL YOUNG, ) | |
| ) | |
| Defendant. ) | |

## ORDER

Before the Court is Defendant Quennel A. Young's Motion to Suppress Evidence. (Doc. 26). The magistrate judge submitted a Report and Recommendations on the Motion. (Doc. 53). The Court also considered Defendant's Objections to the Report and Recommendations. (Doc. 56). For the reasons set forth in this order, the Report and Recommendations is adopted and the Motion to Suppress is **DENIED**.

## BACKGROUND

Defendant has been charged by Indictment with one count of possession with intent to distribute 500 grams or more of a mixture or substance containing methamphetamine. (Doc. 13). Initially, Defendant was charged by Criminal Complaint. (Doc. 1). Attached to the Criminal Complaint was the Affidavit of Drug Enforcement Administration Task Force Officer Richard B. Leslie, wherein Officer Leslie as the affiant stated that Missouri State Highway Patrol Trooper T.A. Barrett stopped Defendant after he "observed a black passenger vehicle eastbound in front of him at a high rate of speed, passing several other motorists in the right and left lanes travelling in excess of 100 miles per hour." (Doc. 1-2 at ¶ 4). Defendant now moves "to suppress any evidence in this case, and any statements in this case, obtained by law enforcement officers as a result of the

1

July 26th, 2020 search by police officers, said search and seizure having occurred on Interstate 44 in Jasper County, Missouri at mile marker 30.4 in a rental vehicle" driven by Defendant. (Doc. 26 at 1). In support, he argues "the stop was or should be looked at as a pre-textual stop on an out of state vehicle," because "the basis of the stop given by the officer is not credible." *Id*. at 2. He claims Defendant was stopped "due to a combination of race and out of state plates." In addition, Defendant argues the officer lacked probable cause to search the vehicle. *Id*. at 6-7. The Government filed Suggestions in Opposition. (Doc. 27).

Evidentiary hearings were conducted on January 14, 2021, and April 22, 2021. (Docs. 29, 41). The Government was represented at both hearings by Assistant United States Attorney Cameron Beaver. Defendant appeared in person at both hearings with his attorney, Stuart Huffman. Law enforcement officer Timothy Barrett appeared and testified at both hearings. The findings of fact in the Report and Recommendations are incorporated herein. Corporal Timothy Barrett ("Cpl. Barrett") has been employed by the Missouri State Highway Patrol ("MSHP") for 14 years. (Doc. 32 at 3). Prior to that he worked as a patrolman for the city of Carthage for four years. *Id*. at 4. Cpl. Barrett attended the Missouri State Southern Police Academy in 2001, which included training in traffic crashes and traffic enforcement, and the MSHP's 27-week academy in 2007, which included training focused on highway traffic safety. *Id*. at 4-5. Cpl. Barrett has received specialized training in the detection of controlled substances at several nationwide conferences and teaches an MSHP class on this subject. *Id*. at 5-6. He is assigned to the MSHP's Criminal Interdiction Unit to detect criminal activity that flows across the interstate highways. *Id*. at 5, 24.

Cpl. Barrett is specifically assigned to Interstate 44 ("I-44") from the Oklahoma-Missouri state line to Lebanon, Missouri and routinely travels multiple times per week between Joplin,

Missouri and Springfield, Missouri. *Id*. at 6. At 7:45 a.m. on July 26, 2020, Cpl. Barrett was in his stationary vehicle watching traffic on I-44 between the 22- and 24-mile markers in Jasper County, Missouri. *Id*. at 6-7, 25. He observed an eastbound dark-colored vehicle rapidly passing other vehicles on both the left and the right and nearly hitting another vehicle. *Id*. at 7-8, 24-26. At this point, Cpl. Barrett had seen neither the driver nor the license plate of the dark-colored vehicle. *Id*. at 30, 38-39. Cpl. Barrett began driving eastbound to overtake the dark-colored vehicle. *Id*. at 8. Cpl. Barrett did not activate his lights and siren initially, because in his experience doing so causes other drivers to do "weird things," such as change lanes unexpectedly or come to a complete stop on the highway. *Id*. at 53. Within the first one to three miles of pursuit, Cpl. Barrett was unable to overtake the dark-colored vehicle, so he activated his lights and siren and accelerated to speeds in excess of 100 miles per hour, at one point reaching 130 miles per hour, in an effort to overtake the vehicle. *Id*. at 8, 27-28, 50. The posted speed limit on the portions of I-44 at issue is 70 miles per hour. *Id*. at 50. Between mile markers 26 and 29, Cpl. Barrett was blocked behind tractor trailers in both lanes and lost visual contact with the dark-colored vehicle. *Id*. at 30, 52. There are no exits between mile markers 26 and 29 on I-44. *Id*. at 31

     Near Exit 29, Cpl. Barrett entered a construction zone, where the eastbound lanes crossed over to the westbound lanes and traffic moved head-to-head in single lanes. *Id*. at 9, 32. Eastbound I-44 slopes downward here, so when Cpl. Barrett entered the construction zone, he could see the dark-colored vehicle at the bottom of the hill weaving back and forth less than three car lengths behind a box truck. *Id*. at 9, 51. Based on his training and experience, Cpl. Barret believed this established a traffic violation for following too closely. *Id*. at *54*. As the dark-colored vehicle exited the construction zone, it passed the box truck on the left, then pulled back into the right lane behind a tractor trailer. *Id*. at 10, 29, 52. The box truck then passed the dark-colored vehicle on the left,

3

and the dark-colored vehicle then moved to the right onto the eastbound on-ramp from Exit 29, then moved to the left back into the eastbound right lane. *Id*. at 10, 51-52. According to Cpl. Barrett, this action constituted a traffic violation for failure to drive within a single lane and indicated that the driver may have been impaired. *Id*. at 56, 58-59.

During the entirety of his pursuit of the dark-colored vehicle, a Chevy Malibu, Cpl. Barrett recalled seeing no other Chevy Malibus. *Id*. at 55. Cpl. Barrett initiated a traffic stop at the 30.4-mile marker. *Id*. at 10, 13, 28. As the vehicles pulled towards the shoulder, Cpl. Barrett could see for the first time that the driver of the dark-colored vehicle was male. *Id*. at 13.

Cpl. Barrett approached the dark-colored vehicle and made contact with the driver, Defendant in this case, through the passenger window. *Id*. at 14-15. Cpl. Barrett immediately smelled the odor of unburnt, green or raw marijuana coming from Defendant's vehicle. *Id*. at 15, 45. Cpl. Barrett described this smell as "the smell of a skunk [or a] burn in your nose that you smell." *Id*. at 35. Cpl. Barrett returned to his vehicle to run computer checks and also contacted his troop to ask them to send another trooper to his location. *Id*. at 16-17. Trooper Fischer arrived at the location, at which time Cpl. Barrett recontacted Defendant and asked him to exit his vehicle. *Id*. at 17. Cpl. Barrett then asked Defendant about the odor of marijuana and also whether he possessed a marijuana card allowing him to possess medical marijuana, to which Defendant said, "No." *Id*. at 17-18, 35. Cpl. Barrett also asked Defendant if his vehicle contained any marijuana, to which Defendant replied, "No, just the weed that I threw out." *Id*.

Based on the odor of marijuana, Cpl. Barrett proceeded to search Defendant's vehicle. *Id*. at 18-19, 44. During the search, Defendant sat in Trooper Fischer's vehicle by choice. *Id*. at 19, 44, 46. Cpl. Barrett found a small amount of marijuana in a small pill bottle in the front passenger door pocket. *Id*. at 19, 32. He found approximately 17 grams of marijuana in small pill bottles in

4

Case 3:20-cr-05027-MDH   Document 57   Filed 08/17/21   Page 4 of 11

a backpack on the back seat. *Id*. Hidden in the trunk lid, Cpl. Barrett observed two cylindrical bundles wrapped in duct tape, 8-10 inches long and 4-5 inches in diameter, which he believed contained controlled substances based on his training and experience. *Id*. at 19-20. At this point, Cpl. Barrett returned to Trooper Fischer's vehicle, asked Defendant to exit, and placed Defendant in handcuffs. *Id*. at 21. Cpl. Barrett then retrieved the two bundles from the trunk of the dark-colored vehicle, placed Defendant under arrest for suspected possession of a controlled substance and transported him to the MSHP office in Carthage, Missouri. *Id*. at 21, 60. Defendant's vehicle was towed to the Carthage office, escorted by Trooper Fischer. *Id*.

At the Carthage office, Cpl. Barrett conducted a further search of Defendant's vehicle. *Id*. at 22. Hidden within the center console, Cpl. Barrett found three more bundles wrapped in duct tape, similar in size and shape to the two bundles he had found previously in the trunk lid. *Id*. One of the two bundles found in the trunk and one of the three bundles found in the center console were field-tested and showed positive for methamphetamine. *Id*. at 23. All five of the bundles were then submitted to the MSHP Crime Lab, where they tested positive for methamphetamine. *Id*.

In his arrest report, Cpl. Barrett wrote that Defendant's vehicle was a "black Malibu" but believed that was a "typo," as the vehicle's color was actually "charcoal or dark gray." *Id*. at 37-38. According to Cpl. Barrett, the purpose of an arrest report is to provide "an in-depth description of all the events that transpired from the beginning to the end" of the incident. (Doc. 43 at 12).

On July 26, 2020, Cpl. Barrett also prepared a Probable Cause Statement for the Jasper County prosecuting attorney. (Ex. A, April 22, 2021). Cpl. Barrett explained that, in contrast to an arrest report, the purpose of a probable cause statement is to provide a "brief overview of the incident that describes the elements of the crime," to assist the prosecutor in deciding whether to file charges. (Doc. 43 at 4-5). According to the Probable Cause Statement, the crimes which Cpl.

Barrett had probable cause to believe Defendant had committed were Trafficking Drugs, Possession of Controlled Substance, Possession of Marijuana and Unlawful Possession of Drug Paraphernalia. (Ex. A, April 22, 2021). In the narrative portion of the Probable Cause Statement, Cpl. Barrett wrote that he "stopped black Chevrolet Malibu eastbound at the 30.4-mile marker for following too closely and failure to drive in a single lane." Cpl. Barrett testified that although the speeding violation initially drew his attention, he did not refer to it in the Probable Cause Statement because he "didn't have an actual speed, and [he] did actually have a solid following too close and lane violation [which] were the two violations that [he] would have been able to issue a ticket on." *Id*. at 10-11.

## STANDARD

The Fourth Amendment protects citizens from unreasonable searches and seizures by the government. *See* U.S. Const. amend. IV; *United States v. Va Lerie*, 424 F.3d 694, 701 (8th Cir. 2005). Generally, evidence found as a result of an unlawful search or seizure, and the fruits therefrom, cannot be used against a defendant and must be suppressed. *United States v. Riesselman*, 646 F.3d 1072, 1078-79 (8th Cir. 2011).

## DISCUSSION

Defendant raises two arguments for suppression. First, he argues that "due to different reasons stated for the stop … the stop was or should be looked at as a pre-textual stop on an out of state vehicle," because "the basis of the stop given by the officer is not credible." (Doc. 26 at 2). He further claims Defendant was stopped "due to a combination of race and out of state plates." *Id*. at 5. Second, Defendant asserts there was not probable cause to search the vehicle, contesting "that any odor of marijuana was present." *Id*. at 6-7. The magistrate judge found Cpl. Barrett's

testimony to be credible and that there was probable cause to stop the vehicle and to search the vehicle. The Court agrees.

1. **The basis for the stop and Corporal Barrett's credibility**

A traffic stop is considered a seizure for Fourth Amendment purposes. *Delaware v. Prouse,* 440 U.S. 648, 653 (1979)). In order to justify the seizure, the stop must be "supported by either probable cause or an articulable and reasonable suspicion that a traffic violation has occurred." *United States v. Washington,* 455 F.3d 824, 826 (8th Cir.2006). It is well-established that "*any* traffic violation, regardless of its perceived severity, provides an officer with probable cause to stop the driver." *United States v. Jones*, 275 F.3d 673 680 (8th Cir. 2001).

Defendant contends that the basis asserted for the traffic stop is not credible because different reasons were cited as the basis for stopping Defendant. He further claims that Cpl. Barrett actually stopped Defendant "due to a combination of race and out of state plates." *Id*. at 5. Here, Cpl. Barrett observed Defendant within one to three car lengths of the vehicle in front of him at a speed of around 70 miles per hour. (Doc. 32 at 51). Thus, Cpl. Barrett had probable cause to believe that Defendant had violated Mo. Rev. Stat. § 304.017, which states that the "driver of a vehicle shall not follow another vehicle more closely than is reasonably safe and prudent, having due regard for the speed of such vehicle and the traffic upon and the condition of the roadway." Cpl. Barrett also observed Defendant pull to the right onto the ramp allowing entry to, not exit from, I-44 and from which "there's nowhere for him to go." (Doc. 32 at 59). Based on this observation, Cpl. Barrett had probable cause to believe that Defendant had committed an additional traffic violation by failing to drive in a single lane in violation of Mo. Rev. Stat. § 304.015. As a result, these two observed traffic violations provided Cpl. Barrett with sufficient probable cause to stop Defendant.

7

As for Cpl. Barrett's credibility, the magistrate judge found his testimony in this matter to be entirely credible. Determining the credibility of a witness is a task generally left to the hearing judge and, if the findings are not internally inconsistent, rarely results in clear error. *See Anderson v. City of Bessemer City*, 470 U.S. 564 (1985); *see also United States v. Heath*, 58 F.3d 1271 (8th Cir. 1995).

Here, there were no documents or objective evidence presented that contradicted Cpl. Barrett's testimony. Although Defendant points to the different reasons given for the stop in the probable cause statement filed in state court ("following too closely and failure to drive in a single lane") and the affidavit attached to the criminal complaint in this case ("travelling in excess of 100 miles per hour"), the magistrate judge found that there is no inconsistency. First, Cpl. Barrett "coherently, consistently and plausibly" testified that he observed all three of these traffic violations in succession. Any one of these violations alone would have provided sufficient probable cause to stop Defendant's vehicle. Cpl. Barrett further explained that he cited the two violations of following too closely and failure to drive in a single lane in the narrative portion of the probable cause statement he prepared because he thought they were the most "solid" violations justifying the initial stop of Defendant's vehicle. Also, the purpose of the probable cause statement was not to explain why Cpl. Barrett believed he had probable cause to stop Defendant for traffic violations. Rather, it was to explain why Cpl. Barrett believed there was probable cause to charge Defendant with Trafficking Drugs, Possession of Controlled Substance, Possession of Marijuana and Unlawful Possession of Drug Paraphernalia.

Although Defendant asserts that Cpl. Barrett stopped him due to his race and out-of-state license plates, Cpl. Barrett's credible testimony refutes this claim. Cpl. Barrett was parked when he initially observed Defendant's vehicle from a distance, weaving in and out of traffic at a high

rate of speed and nearly hitting another vehicle, which prompted Cpl. Barrett to begin pursuit. Cpl. Barrett was unable to discern Defendant's race or the license plate of Defendant's vehicle until several miles later, when he was finally able to stop Defendant. No evidence was presented to contradict this, nor to support Defendant's conclusory assertion that Cpl. Barrett stopped him due to his race and out of-state license plate. *See United States v. Frazier*, 408 F.3d 1102, 1108 (8th Cir. 2005) (To prove an equal protection violation under the Fourteenth Amendment by a law enforcement officer, a defendant must identify affirmative evidence from which a jury could find that the officer's conduct was driven by race or another improper motive).

Accordingly, the magistrate judge concluded—and this Court agrees—that there was sufficient probable cause to initially stop Defendant's vehicle and that Cpl. Barrett's testimony regarding the reasons he pursued and stopped Defendant's vehicle is credible. Therefore, as to this basis, the motion is denied.

**2. Probable cause to search the vehicle**

When Cpl. Barrett initially made contact with Defendant at the passenger window of his vehicle, he immediately smelled the odor of unburnt, green or raw marijuana coming from inside the vehicle. (Doc. 32 at 15, 45). Cpl. Barrett described the smell as "the smell of a skunk [or a] burn in your nose that you smell." *Id*. at 35. Cpl. Barrett has been trained in the detection and investigation of controlled substances at several nationwide conferences, and he teaches an MSHP criminal patrol class on the subject. *Id*. at 5. Cpl. Barrett is also assigned to the MSHP's Criminal Interdiction Unit, which specially focuses on the detection of controlled substances. *Id*.

Under the plain-smell doctrine, Cpl. Barrett had probable cause to search Defendant's vehicle. "The Supreme Court has recognized that the odor of an illegal drug can be highly probative in establishing probable cause for a search." *United States v. Caves,* 890 F.2d 87, 90 (8th

9

Cir.1989) (citing *Johnson v. United States,* 333 U.S. 10, 13 (1948)). In numerous cases, the Eighth Circuit has held that the smell of marijuana coming from a vehicle supports probable cause to search for drugs. *See United States v. Williams*, 955 F.3d 734, 737 (8th Cir. 2020) ("the odor of marijuana provides probable cause for a warrantless search of a vehicle under the automobile exception"); *United States v. Smith*, 789 F.3d 923, 929 (8th Cir. 2015) (the "slight odor of marijuana" was "sufficient to establish probable cause to search an automobile and its contents"); *United States v. Winters*, 221 F.3d 1039, 1042 (8th Cir. 2000) (the smell of raw marijuana created "probable cause to search the car and its contents for drugs"); *United States v. Peltier*, 217 F.3d 608, 610 (8th Cir. 2000) (the odor of burnt marijuana "gave the deputy probable cause to search [the] truck for drugs"); *United States v. McCoy*, 200 F.3d 582, 584 (8th Cir. 2000) (the odor of burnt marijuana on the suspect and the smell of air freshener in the car gave officer probable cause to search the vehicle); *United States v. Neumann*, 183 F.3d 753, 757 (8th Cir. 1999) (officer's detection of smell of burnt marijuana provided probable cause to search entire vehicle); *Caves*, 890 F.2d at 90-91 (8th Cir. 1989) (the smell of burnt marijuana supported probable cause for a vehicle search).

Based on the foregoing, the Court finds that there was sufficient probable cause to search Defendant's vehicle for illegal drugs and as to this basis the motion is denied.

### 3. Fruit of the poisonous tree

In addition, Defendant moves for the suppression of "any statements in this case." (Doc. 26 at 1). Under the fruit of the poisonous tree doctrine, the exclusionary rule bars the admission of evidence obtained directly or indirectly through the exploitation of police illegality. *See Wong Sun v. United States*, 371 U.S. 471, 484-88 (1963). As discussed above, however, there was no unlawful seizure or search by law enforcement officers in this matter. Consequently, to the extent

Defendant is attempting to raise any fruit of the poisonous tree argument, such a claim is unsupported.

## CONCLUSION

For the reasons set forth above, the Report and Recommendations is adopted and Defendant's Motion to Suppress Evidence is **DENIED**.

**IT IS SO ORDERED.**

Dated: August 17, 2021                                */s/ Douglas Harpool*
                                                                         **DOUGLAS HARPOOL**
                                                                         **United States District Judge**